UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSHUA STAPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00356-LEW |
| | ) | |
| LIPPERT COMPONENTS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND
TO COMPEL ARBITRATION**

In this action, Plaintiff Joshua Staples alleges claims of strict products liability, negligence, and breach of warranty against Defendants Lippert Components ("Lippert"), Forest River, Inc. ("Forest River"), and RV Wholesalers, Inc. ("RVW") for injuries that he received from a newly purchased recreational vehicle ("RV"). The matter comes before the Court on Defendant RVW's Motion to Dismiss (ECF No. 13) and Defendants Lippert and Forest River's Motion to Dismiss and Compel Arbitration (ECF No. 16).

## BACKGROUND

The following facts are drawn from the Complaint and are assumed to be true for purposes of Defendants' Motions to Dismiss.

On July 3, 2020, Plaintiff purchased online a new RV from RVW. The RV was a Wildwood Travel Trailer manufactured by Forest River. Plaintiff found and purchased the RV online, specifying in the contract for sale that he lived in Hampden, Maine, and that the RV would be delivered there. The RV was delivered to Plaintiff in September of 2020.

In connection with the transaction, a contract was executed, which included a Disputes Addendum (ECF No. 13, Exhibit A). The addendum contained an arbitration agreement. *Id.* Plaintiff signed the addendum on September 25, 2020. Defendant RVW has filed both a copy of the addendum that was not signed by a RVW representative and a copy bearing a signature by a RVW representative on September 26, 2020.

The RV was equipped with a Solera Power Awning, which is designed and marketed as having an auto-adjustment "rain dump" feature that automatically retracts and expands to remove pooled water from the awning. Defendant Lippert manufactured the Solera Power Awning and placed it into the stream of commerce. Forest River incorporated the Solera Power Awning into the RV.

Prior to the first snowfall, Plaintiff took the RV to a commercial RV dealer to have it winterized and stored. The following spring, Plaintiff instructed the commercial RV dealer to take the RV out of storage and summerize it. On May 5, 2021, Plaintiff noticed that water had pooled on top of the extended awning because the auto-adjustment feature was not working and, consequently, Plaintiff had to manually adjust the pitch of the awning to remove the water.

Plaintiff referred to the Solera Power Awning Owner's Manual, which provided that the awning's pitch can be set by adjusting the articulating arm to tip to one side of the awning to allow water runoff. Plaintiff pulled downward on the joint of the articulating arm, which snapped closed on his hand. Plaintiff's left thumb was injured, requiring surgery.

## DISCUSSION

### A. Arbitration

Plaintiff presents claims of strict liability, negligence, and breach of express and implied warranties against all Defendants. All Defendants contend that the Court must compel the parties to resolve their dispute through arbitration based on the language of the Disputes Addendum.[1]

The Disputes Addendum provides in relevant part:

> Should any dispute arise between you, the customer, and RVW concerning the (i) RVW Purchase Agreement, (ii) RVW Terms and Conditions, (iii) the unit purchased, and/or (iv) any aspect of the purchase and sale, you and RVW agree to these terms:
>
> 1. <u>Arbitration</u>. Any controversy or claim arising out of or relating to your transaction(s) or interaction(s) with RVW, will be settled by arbitration in accordance with the commercial arbitration rules of the Ohio Arbitration Act (R.C. § 2711.01 et seq.) and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . .

Disputes Addendum (ECF No. 13, Exhibit A).

Defendants argue that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and applicable law require that the parties arbitrate their claims in lieu of litigation. Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. Plaintiff counters that there was no mutual intent to abide

---

[1] Defendant RVW also requests dismissal of the complaint because it was misnamed. For the reasons discussed herein, I need not address this argument.

by the arbitration provision in the Disputes Addendum and that his suit does not fall within the scope of the arbitration agreement.

"In deciding a motion to compel arbitration, a court must ascertain whether: '[1] there exists a written agreement to arbitrate, [2] the dispute falls within the scope of that arbitration agreement, and [3] the party seeking an arbitral forum has not waived its right to arbitration.'" *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (quoting *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)).

Plaintiff challenges RMV's invocation of the arbitration clause based on the first and second prongs. When addressing these contentions, I must consider principles of Maine contract law while also honoring federal law favoring arbitration. *See id.* [2]

### 1. *Existence of written agreement*

As to the first prong, Plaintiff argues that mutual agreement to be bound is lacking because Defendant RVW filed a copy of the Addendum that does not include its own signature. In its Reply, RVW filed another copy that includes its signature, entered on September 26, 2020, the day after delivery. "A contract exists when the parties mutually

---

[2] The parties do not argue concerning applicable law. Although the Disputes Addendum calls for the application of Ohio commercial arbitration rules, it does not specify a choice of law concerning contract formation and construction. Applying the conflict of law rules of this jurisdiction, I find that Maine law is the applicable law because performance of the contract occurred in Maine (where the vehicle was delivered). *See Long v. Fairbank Farms Reconstruction Corp.*, 824 F. Supp. 2d 197, 200 (D. Me. 2011). However, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). I therefore do not apply the interpretive rule announced in *Barrett v. McDonald Invs., Inc.*, 870 A.2d 146, 150-51 (Me. 2005) (holding that ambiguities in arbitration clause are construed against the drafter and that the rule "is particularly compelling in contracts where one party has little or no bargaining power"). *See Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 6 n.3 (1st Cir. 2012); *Casale v. Ecolab Inc.*, 585 F. Supp. 3d 99, 108 n.7 (D. Me. 2022), *reconsideration denied*, 2022 WL 1910126 (D. Me. June 3, 2022), *and appeal dismissed*, 2023 WL 4229239 (1st Cir. Apr. 21, 2023).

assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22, 28 (quotation marks omitted). RVW delivered the RV and conditioned its sale on Plaintiff's execution of the Addendum. RVW's presentation of the Addendum for signature reflects its intent to be bound and Plaintiff's signature on the Addendum reflects Plaintiff's intent to be bound.

### 2. Scope of agreement

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582 (1960)). The arbitration agreement encompasses disputes "concerning . . . the unit purchased" involving "[a]ny controversy or claim arising out of or relating to your transaction(s) or interaction(s) with RVW[.]" (ECF No. 13, Exhibit A). This capacious language[3] is an attempt to cover the vast array of controversies that can arise from the sale of goods. As noted by the Defendants, in *Winterwood Farm, LLC v. JER, Inc.*, this Court analyzed similar terminology by looking to a Maine Superior Court decision determining that "'[a]rising out of' is ordinarily held to mean originating from, growing out of, flowing from, incident to or having connection with." 327 F. Supp. 2d 34, 39 (D. Me. 2004) (quoting *Acadia Ins. Co. v. Vermont Mut.*

---

[3] *See McCarthy v. Azure*, 22 F.3d 351, 358 (1st Cir. 1994) (citing cases explaining different textual analyses as to narrow or broad language in arbitration agreements).

*Ins. Co.*, No. CV 02-440, 2003 WL 23185875, at *1 (Me. Super. 2003) (citation and internal quotation marks omitted)).

Defendants bear "the burden of demonstrating that a particular claim comes within the scope of an arbitration agreement," but any ambiguities generally are resolved in favor of arbitration. *Breda v. Cellco P'ship*, 934 F.3d 1, 7 (1st Cir. 2019); *see also Moses H. Cone Mem'l Hos. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). In fact, "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad." *Mobil Oil Corp. v. Local 8-766, Oil Workers Intern'l Union*, 600 F.2d 322, 328 (1st Cir. 1979) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584 (1960)).

Here, taking into account the presumption of arbitrability, the unambiguously broad language of the arbitration provision captures the claims pressed by Plaintiff because the dispute concerns the unit purchased by Plaintiff and the claims relate to the sale of said unit to Plaintiff.

### 3. *Nonsignatory enforcement*

Neither Defendant Lippert nor Defendant Forest River signed the arbitration agreement. Defendants Lippert and Forest River contend that the fact that they did not sign

the arbitration agreement is irrelevant and thus all claims against them should be compelled to arbitration as well. Plaintiff did not respond to this argument.

"Although the FAA requires a preexisting agreement to arbitrate, the Act does not require that every party personally sign the written arbitration provision." *McCarthy v. Azure*, 22 F.3d 351, 355-56 (1st Cir. 1994). A non-contracting party, however, generally needs to demonstrate that its recourse to an arbitration provision is supported by relevant state law, such as, for example, the law of estoppel or third-party beneficiary law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-32 (2009). *See also Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 12 (1st Cir. 2014) ("*Carlisle* holds that, at least as a general principle, state law governs the inquiry as to whether a non-party to an arbitration agreement can assert the protection of the agreement.").

This Court determined under a different scenario that "a court will 'estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and the signatory and nonsignatory parties share a close relationship." *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 306-307 (D. Me. 2003) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 62 (2d Cir. 2001)). Although the efficiencies of bundling these claims and parties are no doubt apparent to all of the parties, the application of estoppel principles in this case is uncertain, perhaps even a stretch. However, Plaintiff did not file an objection to Lippert and Forest River's motion requesting that any referral to arbitration should encompass the claims against them. Local Rule 7(b) provides that a party who fails to file a written objection to a motion "shall be

deemed to have waived objection." D. Me. Loc. R. 7(b). Accordingly, the request will be granted.

### B. Stay or Dismissal

The remaining question is whether this matter should be stayed or dismissed. The First Circuit has explained that the district court retains discretion either to dismiss or to stay a case. *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998). The arbitration agreement in question states that "any lawsuit . . . will be stayed pending . . . arbitration[.] (ECF No. 13, Exhibit A). However, the parties cannot by force of contract bind the Court in regard to the management of its docket.

Judge Hornby cited the following advantages of dismissal under similar circumstances:

> Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. This course of action will also make the arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal.

*Boulet v. Bangor Securities Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004) (citing *Bangor Hydro–Electric Co.*, 62 F.Supp.2d at 161 n. 9 (quoting *Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.*, 636 F.Supp. 750, 757–58 (D.P.R. 1986))). *See also Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (Woodcock, J.) (staying rather than dismissing case based on parties' mutual request, but observing that dismissal was otherwise more appropriate given that, "[i]f the parties arbitrated and then returned to this

Court, they would do so under markedly different legal theories and standards."). I find that these considerations are persuasive and militate in favor of dismissal.

## CONCLUSION

Defendants' Motions (ECF Nos. 13 & 16) are GRANTED. This matter is dismissed without prejudice and Plaintiff is compelled to arbitrate his claims in lieu of litigating them in this civil action.

**SO ORDERED.**

Dated this 25th day of July, 2023.

                                                 /s/ Lance E. Walker
                                                 UNITED STATES DISTRICT JUDGE